USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/28/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL WILLIAMS,                                    :
                                                     :   REPORT AND
                          Petitioner,                :   RECOMMENDATION
                                                     :
          -v.-                                        :   11 Civ. 0104 (RJH) (JLC)
                                                     :
THOMAS LAVALLEY,                                      :   (Non-ECF Case)
                                                     :
                          Respondent.                :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Richard J. Holwell, United States District Judge:**

Pro se petitioner Michael Williams ("Williams") seeks a writ of habeas corpus under 28 U.S.C. § 2254 (the "Petition" or "Pet."), challenging his January 2, 2007 conviction and sentence in New York State Supreme Court, Bronx County. Williams filed the Petition more than nine months after the expiration of the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). By Order dated March 1, 2011, I ordered Williams to show cause why the Petition should not be dismissed as time barred. For the reasons stated below, I recommend that the Petition be dismissed.

## I. BACKGROUND

On January 2, 2007, following a jury trial in New York State Supreme Court, Williams was convicted of murder in the second degree and sentenced to a term of 25 years to life. (Pet. ¶¶ 2-3 (Dkt. No. 1)). The Appellate Division, First Department affirmed Williams' conviction on September 16, 2008. People v. Williams, 864 N.Y.S.2d 405 (N.Y. App. Div. 2008).

Williams' conviction was based on a pattern of physical abuse of his five-week-old son, culminating in an incident where he slammed his son onto a crib mattress several times and then

held him in a choke hold, resulting in the infant's death. Id. at 406. The First Department found that these acts, which created a grave risk of serious physical injury or death to the child, "evinced a depraved indifference to human life." Id. The court further reasoned that Williams' attempts to revive his son and obtain help did not undermine the jury's finding that he acted with depraved indifference to human life at the time he inflicted the injuries. Id. Additionally, the First Department held that the trial court did not violate Williams' right to free exercise of his religion when it prohibited him from displaying his Bible in front of the jury, as such an act would have improperly "posed the risk of evoking sympathy." Id. The New York Court of Appeals denied leave to appeal on December 11, 2008. People v. Williams, 901 N.E.2d 771 (N.Y. 2008).

Williams had been assigned an attorney, Carl Kaplan ("Kaplan"), to assist him with the state appeal of his conviction. (Petitioner's Answer to Court's March 1, 2011 Order to Show Cause ("Pet'r's Answer") ¶ 8 (Dkt. No. 10)).[1] After the First Department affirmed his conviction in September 2008, Williams wrote a letter to Kaplan dated November 19, 2008, "inquir[ing] into [the] next stage of appeal." (Id. ¶ 10). On December 3, 2008, Kaplan responded that he would inform Williams "promptly" of the Court of Appeals' decision. (Pet. Ex. A). Williams followed up on February 13, 2009, inquiring into the status of his leave application. (Pet'r's Answer ¶ 11). He wrote again on April 20, 2009, asking whether Kaplan would continue to represent him if the Court of Appeals ordered a new trial. (Id. ¶ 12).

After receiving no response to either of these letters, and wrongly assuming that the Court of Appeals had granted leave, Williams alleges that he mailed "appellate

---

[1] Williams' Answer does not indicate when Kaplan was assigned to assist him with the appeal.

documents/papers" to a friend outside the prison to prepare for an appeal. (Id. ¶¶ 11-12).[2] Williams says he assumed that leave had been granted because he was unable to find a published decision by the Court of Appeals denying leave in the prison's law library. (Id. ¶ 12). He also asserts that he sent his documents and court records out of the facility in compliance with the New York State Department of Correctional Services Directive 4913 ("DOCS Directive 4913"), which limits the amount of personal property inmates may accumulate. (Id. ¶ 16 n.1); Inmate Property, N.Y. Dep't Corr. Servs. (Mar. 16, 2011), http://www.docs.state.ny.us/Directives/4913.pdf. Williams adds that he did not recover these documents until early December 2010. (Pet'r's Answer ¶ 17).

After mailing his documents out of the facility, Williams alleges that he wrote follow-up letters to Kaplan on May 18 and June 29, 2009. (Id. ¶¶ 12-13). In a letter dated August 19, 2009 to Kaplan's employer, the Center for Appellate Litigation, Williams inquired into whether Kaplan could be reached. (Id. ¶ 14). On September 14, November 20, and December 20, 2009, Williams says that he wrote again to Kaplan requesting information regarding the status of the Court of Appeals' decision. (Id. ¶ 15).

Kaplan replied in a letter dated December 18, 2009, which stated that the Court of Appeals had denied Williams' leave to appeal. (Pet. Ex. B). Williams received this letter on December 23, 2009, nearly three months before the Petition was due. (Pet'r's Answer ¶¶ 15-16). Kaplan wrote further that he had informed Williams of the Court of Appeals' decision in an earlier letter "some months ago," without specifying the date. (Pet. Ex. B). In his letter, Kaplan advised Williams of his option to file pro se a habeas corpus petition in federal court and

---

[2]    Williams does not identify exactly which documents were included in his "appellate documents/papers." In light of Williams' arguments discussed in Section II(A)(2), infra, the Court assumes that these were all documents necessary to prepare the Petition.

3

specifically mentioned the one-year time limit for filing such a petition. (Id.). Kaplan further informed Williams that his circumstances necessitated the filing of any petition by March 11, 2010, and attached a document explaining Williams' options entitled "Notice to Defendants upon Affirmance of Their Convictions by New York State Appellate Courts." (Id.).

After searching through United States Postal Service and New York State Department of Correctional Services records, Williams says he was unable to find any correspondence from Kaplan in the time between the Court of Appeals' decision and Kaplan's December 18, 2009 letter. (Pet'r's Answer, Ex. B ("Conditional-Default-Letter") ¶ 3(a)). In addition, Williams contends that Kaplan's failure to respond to his "Conditional-Default-Letter," dated April 5, 2011, in which he requests a copy of Kaplan's earlier letter describing the Court of Appeals' decision, confirms that Kaplan never mailed such a letter before December 2009. (Conditional-Default-Letter ¶¶ 2, 5).

On December 22, 2010, Williams filed the Petition.[3] He asserts two grounds for relief: (1) the verdict was based on legally insufficient evidence of a depraved indifference to human life, and (2) the court violated his right to free exercise of religion when it prohibited him from displaying his Bible in the presence of the jury. (Pet. ¶ 8(f)). On March 1, 2011, I ordered Williams to show cause why the Petition should not be dismissed as untimely under AEDPA's one-year statute of limitations. (Order to Show Cause (Dkt. No. 8)). Williams filed his response on April 20, 2011. (Pet'r's Answer).

---

[3]    The Petition states that it was executed on December 14, 2010 and placed in the prison mailing system on December 15. (Pet. 21; see also Pet'r's Answer ¶¶ 4, 17). However, Williams writes in a letter dated December 21 that he had been "trying to send out" the Petition since December 15, but it was returned to him several times. (Pet. Ex. G). A notarized "Affidavit of Service" states that Williams ultimately gave the petition to prison officials on December 22, 2010. (Pet. Ex. G). Because Williams is incarcerated, he benefits from the "prison mailbox rule," which provides that a complaint is deemed filed on the day it is handed to prison officials for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988). Regardless of whether Williams' Petition is deemed filed on December 14, 15, or 22, 2010, the Petition is untimely.

4

## II. <u>DISCUSSION</u>

AEDPA establishes a one-year statute of limitations to an application for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The one-year period begins to run on the date a conviction becomes final. § 2244(d)(1)(A). "A conviction becomes final for purposes of 28 U.S.C. § 2244(d) upon expiration of the ninety-day period to petition for a writ of certiorari to the United States Supreme Court," in this case, on March 11, 2009. <u>Pratt v. Greiner</u>, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002). Accordingly, Williams' Petition was due on March 11, 2010, and his December 22 filing was more than nine months late.

As the Supreme Court has recently concluded, an otherwise untimely petition for a writ of habeas corpus may be tolled "only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2560-62 (2010) (internal quotation marks omitted). The Second Circuit had previously observed that a limitations period may be equitably tolled "only in the 'rare and exceptional circumstance[ ].'" <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000) (quoting <u>Turner v. Johnson</u>, 177 F.3d 390, 391-92 (5th Cir. 1999)). Further, "equitable relief such as tolling may be 'awarded in the court's discretion only upon consideration of all the facts and circumstances.'" <u>Baldayuque v. United States</u>, 338 F.3d 145, 150 (2d Cir. 2003) (quoting <u>Vitarroz Corp. v. Borden, Inc.</u>, 644 F.2d 960, 965 (2d Cir. 1981)). In addition, "though it is true that the actions of counsel can, in an appropriate case, warrant equitable tolling, such relief has been found appropriate only in cases involving egregious attorney misconduct." <u>Bramble v. Connolly</u>, No. 10-CV-5775 (JG), 2011 WL 2471515, at *5 (E.D.N.Y. June 21, 2011).

**A.     Williams Has Failed to Demonstrate that Extraordinary Circumstances Prevented Him from Filing a Timely Petition**

Williams alleges two extraordinary circumstances that prevented him from timely filing the Petition:  (1) his attorney's conduct, and (2) his lack of access to papers necessary for preparing the Petition.  (See Pet'r's Answer ¶¶ 19, 20(b)-(c)).  Whether a petitioner's circumstances are extraordinary does not depend on "the uniqueness of the petitioner's circumstances, 'but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'"  Bolarinwa v. Williams, 593 F.3d 226, 231-32 (2d Cir. 2010) (quoting Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008)).  As the Second Circuit recently observed, there is "a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling."  Dillon v. Conway, No. 08-4030-pr, 2011 WL 1548955, at *4 (2d Cir. Apr. 26, 2011).  As discussed below, Williams has failed to establish that his attorney's behavior or his own self-created lack of access to necessary records was an obstacle severe enough to be "extraordinary."

**1.     Williams' Attorney's Conduct is Not an Extraordinary Circumstance Meriting Equitable Tolling**

The conduct of Williams' attorney does not rise to the level of an extraordinary circumstance warranting equitable tolling of AEDPA's limitations period.  In fact, it does not come close, given that his attorney specifically advised him of the deadline to file his petition, and did so three months before it was due to be filed.  It is well established that a "garden variety attorney error," such as a miscalculation that results in an untimely filing, does not constitute the extraordinary circumstance required to render a petitioner eligible for equitable tolling.  Id. at *5 (citing Holland, 130 S. Ct. at 2560-62); see also, e.g., Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001) (attorney's mistaken belief about when tolling period began was ordinary

attorney error and did not warrant equitable tolling). In the rare case of an attorney's "sufficiently egregious" conduct, however, extraordinary circumstances can prevent a timely filed petition. Baldayuque, 338 F.3d at 152. As a general matter, courts have recognized three types of extraordinary attorney error: (1) failure to file a timely habeas petition despite the client's specific order, see id. at 152; (2) misleading the client as to the status of the petition or case, see Dillon, 2011 WL 1548955, at *5; and (3) failure to communicate with and keep the client reasonably informed about the case, see Baldayuque, 338 F.3d at 152.

An attorney's failure to file a petition by the deadline despite being specifically directed by a client to do so may merit equitable tolling. See, e.g., Baldayuque, 338 F.3d at 152 (equitable tolling warranted where lawyer ignored client's specific request to file habeas petition and thus "violated a basic duty of an attorney to his client"); see also Holland, 130 S. Ct. at 2564 (counsel's failure to file on time despite client's repeated letters emphasizing importance of doing so and identifying applicable legal rules constituted extraordinary circumstances). The record before the Court does not indicate that Williams specifically requested Kaplan to file his habeas petition; he only inquired generally into the next stage of appeal and the status of his leave application with the Court of Appeals. (Pet'r's Answer ¶¶ 10, 15). Therefore, Kaplan did not violate his duty as an attorney by ignoring a specific directive from Williams, as there was none, and Williams' Petition is not entitled to equitable tolling on this basis. See Figueroa v. Duncan, 8 F. App'x 73, 75 (2d Cir. 2001) (summary order) (equitable tolling unwarranted where no evidence existed that attorney agreed to file habeas petition or obstructed client petitioner from filing pro se).

In addition to ignoring a client's request to file a petition, "affirmatively and knowingly misleading" a client about the status of the petition also constitutes an extraordinary attorney

7

error. See, e.g., Dillon, 2011 WL 1548955, at *5 (lawyer's misleading promises to client that he would not wait until last day to file were sufficiently extraordinary); Burgos-Santos v. Greene, No. 05 Civ. 3736 (PKC), 2005 WL 2452920, at *3 (S.D.N.Y. Oct. 5, 2005) (attorney's ambiguous communications regarding filing of petition contributed to existence of extraordinary circumstances).

Here, Kaplan did not make any affirmatively misleading statements to Williams. Williams claims that Kaplan's failure to respond to his "Conditional-Default-Letter" constitutes an admission that Kaplan misled Williams by falsely stating that he informed him of his leave status months earlier. (Conditional-Default-Letter ¶¶ 2, 5). A "Conditional-Default-Letter," however, is not recognized as an official discovery tool or otherwise. Although courts may allow habeas petitioners to conduct discovery if they request permission from the court and demonstrate good cause, Williams has not requested any permission to conduct discovery regarding the timeliness of the Petition. See Bracy v. Gramley, 520 U.S. 899, 904 (1997) (habeas petitioner "not entitled to discovery as a matter of ordinary course"). Therefore, Williams has failed to establish that Kaplan made any misleading statements that resulted in the untimely filing of the Petition.

Finally, any argument that Williams' counsel's alleged unresponsiveness constitutes an extraordinary circumstance fails. It is true that a lawyer's failure to keep his client reasonably informed about the status of his case may cause a court to find that extraordinary circumstances existed which obstructed timely filing. See Baldayuque, 338 F.3d at 152. Moreover, allegations that a client's attorney has "effectively abandoned him and prevented him from filing the habeas petition on time" could justify equitable tolling. Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001); see also Baldayuque, 338 F.3d at 152.

Here, however, reviewing the record in the light most favorable to Williams, no such extraordinary circumstances exist. Although Kaplan apparently did not respond to multiple letters from Williams about the status of his appeal, when he did respond, he provided Williams explicit information about the timeline for filing a habeas petition, including the specific date by which a petition had to be filed. Thus, it cannot be said that Kaplan "effectively abandon[ed]" Williams and his case.[4] Moreover, his letter gave Williams more than three months to file the Petition. In light of this record, Williams has failed to demonstrate that his lawyer's conduct constitutes an extraordinary circumstance justifying equitable tolling.

### 2. Williams' Lack of Access to His Papers Does Not Justify Equitable Tolling

Williams' self-created lack of access to documents and records necessary for preparing the Petition until early December 2010 also is not an extraordinary circumstance. An ordinary lack of access or inability to obtain documents does not warrant equitable tolling. See, e.g., Padilla v. United States, No. 02 Civ. 1142 (CSH), 2002 WL 31571733, at *4 (S.D.N.Y. Nov. 19, 2002) ("Even if [petitioner] did not have all the necessary materials or experienced a delay in obtaining them, those are not extraordinary circumstances warranting equitable tolling."); Davis v. McCoy, No. 00 Civ. 1681 (NRB), 2000 WL 973752, at *2 (S.D.N.Y. July 14, 2000) (petitioner's inability to obtain necessary court papers for more than two years not extraordinary circumstance). However, intentional confiscation of a prisoner's habeas petition by prison officials constitutes an extraordinary circumstance meriting tolling of the one-year limitations period. Valverde v. Stinson, 224 F.3d 129, 133-35 (2d Cir. 2000). Such denial of access to

---

[4]   Kaplan's letter of December 18, 2009 apologizes for his delay in not responding sooner to Williams' November 20, 2009 letter. It makes no mention of Williams' other letters, thus suggesting that Kaplan may not have received them. In fact, Kaplan writes that "[s]ome months ago I sent you a letter at Southport [Correctional Facility] stating that unfortunately the Court of Appeals denied us leave to appeal. . . . I infer from your letter that you had not received that letter, which is odd, so I have enclosed another copy of the court's order." (Pet. Ex. B).

necessary papers typically requires "some event [that] effectively prohibits the petitioner from pursuing habeas . . . ." Raynor v. Dufrain, 28 F. Supp. 2d 896, 900 (S.D.N.Y. 1999).

Here, Williams contends that he mailed out the necessary documents for two reasons: (1) to prepare for an appeal, and (2) because DOCS Directive 4913, which limits the amount of property an inmate may possess, required him to dispose of them. (Pet'r's Answer ¶¶ 11, 12). However, Williams' reasons are inconsistent because the DOCS Directive in fact allows prisoners to retain legal materials that pertain to active legal matters, such as an appeal. See Inmate Property, supra. Given that the Directive would have allowed Williams to keep the papers in preparation for an appeal, the DOCS Directive did not "effectively prohibit[]" him from accessing those documents. Williams alone is responsible for his inability to access the papers prior to the end of the one-year limitations period as well as for the subsequent nine months. See Valverde, 224 F.3d at 133 n.3 ("A petitioner's own behavior . . . may of course fatally undermine his claim that 'rare and extraordinary' or 'exceptional' circumstances warrant equitable tolling."). For this reason, Williams' self-created deprivation of access to court papers does not constitute an extraordinary circumstance meriting equitable tolling.

## B.   Williams Has Failed to Demonstrate that He Acted with Reasonable Diligence Throughout the Period He Seeks to Toll

Even if the conduct of Williams' attorney or his inability to access necessary records are extraordinary circumstances, the Court should not apply equitable tolling because Williams has failed to demonstrate that he acted with reasonable diligence throughout the period he seeks to toll. The standard of diligence appropriate "for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland, 130 S. Ct. at 2565 (quoting Starns v. Andrews, 524 F.3d 612, 618 (5th Cir. 2008)). The Second Circuit has identified several factors that could establish reasonable diligence, such as: (1) the petitioner's timely effort to retain

10

counsel specifically for filing a habeas petition; (2) counsel's assurances "that everything had been done that could be done"; (3) counsel's failure to communicate directly with the petitioner "at any time"; and (4) the petitioner's lack of direct access to legal assistance due to his incarceration. Baldayuque, 338 F.3d at 153. Yet even if a petitioner has retained counsel, that act nonetheless "does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition." Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004). Further, a petitioner who has adequate time to file the petition after an extraordinary circumstance has been removed is not entitled to equitable tolling. See Valverde, 224 F.3d at 134; Raynor, 28 F. Supp. 2d at 900 n.7.

Here, Williams received notice from his attorney nearly three months before the statute of limitations for filing his habeas petition expired that the Court of Appeals had denied leave to appeal. (Pet. Ex. A). Although Williams contends that this length of time was "insufficient" to prepare a timely petition, he offers no explanation for why those three months were inadequate. (Pet'r's Answer ¶ 20(b)). Indeed, courts have deemed similar and even shorter periods of time sufficient for petitioners to file in advance of AEDPA limitations deadlines. See, e.g., Minnifield v. Gomez, 132 F. App'x 931, 933-34 (2d Cir. 2005) (summary order) (tolling not warranted where petitioner reached majority age, and therefore any obstacles removed, at least three months before federal habeas petition due); Padilla, 2002 WL 31571733, at *4 (rejecting that obstacles, even if they constituted extraordinary circumstances, could have prevented timely filing because they were removed more than two months before deadline).

Moreover, not only did Williams fail to submit the Petition during the three months after he learned that the Court of Appeals had denied leave, he delayed an additional nine months after the statute of limitations had expired. See Diaz, 515 F.3d at 155 (reasonable diligence

established in part because petitioner filed petition one day after learning of appeal denial). The only excuse Williams offers for his nine-month delay in filing the Petition after the AEDPA deadline is that he did not possess the necessary papers. (Pet'r's Answer ¶ 20(b)). However, as explained in Section II(A)(2), supra, this lack of access to legal materials does not constitute an extraordinary circumstance that warrants equitable tolling. Williams also does not expound on why it took him more than a year after he mailed the documents out of the facility to reacquire them. As a result, Williams has not provided a sufficient justification for his one-year delay in filing the Petition after he discovered that the Court of Appeals had denied him leave to appeal.

### III.  CONCLUSION

For the above reasons, I recommend that the Court dismiss Williams' Petition as time barred under AEDPA.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Holwell. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. As Petitioner may not have access to

cases cited herein that are reported on LexisNexis or Westlaw, the Court includes copies of the

decisions in <u>Dillon</u>, <u>Burgos-Santos</u>, <u>Padilla</u>, and <u>Davis</u>.

Dated: New York, New York
      June 28, 2011

                                    JAMES L. COTT
                                    United States Magistrate Judge

**A Copy of this Report and Recommendation has been mailed to:**

Michael Williams
DIN# 07-A-0599
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

Hon. Richard J. Holwell

Pro Se Office – Room 230

Westlaw.

--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 1548955 (C.A.2 (N.Y.)))**

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
Second Circuit.
Chauncey DILLON, Petitioner–Appellant,
v.
Superintendent James T. CONWAY, Attica Correctional Facility, Respondent–Appellee.

Docket No. 08–4030–pr.
Argued: April 6, 2011.
Decided: April 26, 2011.

**Background:** Following affirmance on direct appeal of petitioner's state court convictions for second-degree murder, attempted robbery, and other offenses, 30 A.D.3d 1135, 815 N.Y.S.2d 574, he petitioned for a writ of habeas corpus. The United States District Court for the Southern District of New York, George B. Daniels, J., 2008 WL 2971986, dismissed the petition. Petitioner appealed.

**Holding:** The Court of Appeals held that extraordinary circumstances warranted equitable tolling of the habeas limitations period.

Vacated and remanded.

West Headnotes

**[1] Habeas Corpus 197 ⚖➔603.20**

197 Habeas Corpus
 197III Jurisdiction, Proceedings, and Relief
  197III(A) In General
   197k603 Limitations, Laches or Delay
    197k603.20 k. Proceedings in general.
Most Cited Cases

**Habeas Corpus 197 ⚖➔842**

197 Habeas Corpus
 197III Jurisdiction, Proceedings, and Relief

197III(D) Review
  197III(D)2 Scope and Standards of Review
   197k842 k. Review de novo. Most
Cited Cases
    The existence of extraordinary circumstances sufficient to justify equitable tolling under of the habeas limitations period is a question of law, and the court of appeals therefore review the judgment of the district court de novo. 28 U.S.C.A. § 2244(d)
.

**[2] Habeas Corpus 197 ⚖➔603.4**

197 Habeas Corpus
 197III Jurisdiction, Proceedings, and Relief
  197III(A) In General
   197k603 Limitations, Laches or Delay
    197k603.4 k. Bar of limitations in general. Most Cited Cases
    The habeas statute of limitations under the Antiterrorism and Effective Death Penalty Act (AEDPA) does not set forth an inflexible rule requiring dismissal whenever its clock has run. 28 U.S.C.A. § 2244(d).

**[3] Equity 150 ⚖➔3**

150 Equity
 150I Jurisdiction, Principles, and Maxims
  150I(A) Nature, Grounds, Subjects, and Extent of Jurisdiction in General
   150k3 k. Grounds of jurisdiction in general. Most Cited Cases
    The exercise of a court's equity powers must be made on a case-by-case basis.

**[4] Habeas Corpus 197 ⚖➔603.16**

197 Habeas Corpus
 197III Jurisdiction, Proceedings, and Relief
  197III(A) In General
   197k603 Limitations, Laches or Delay
    197k603.16 k. Access and assistance.
Most Cited Cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 1548955 (C.A.2 (N.Y.)))**

Extraordinary circumstances warranted equit-able tolling of habeas limitations period for peti-tioner convicted of second-degree murder, attemp-ted robbery, and other offenses; petition was filed only one day late, petitioner and his wife were per-sistent in maintaining contact with the attorney they hired to file the habeas petition, petitioner specific-ally urged the attorney to avoid waiting until the last day to file the petition, and the attorney breached his promise to file before the last day when he filed the petition on what he believed was the last day, when it was actually one day late. 28 U.S.C.A. § 2244(d).

**[5] Habeas Corpus 197 ☞603.13**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(A) In General
         197k603 Limitations, Laches or Delay
           197k603.13 k. Equitable tolling in gen-eral. Most Cited Cases
Whether a circumstance is extraordinary, as will support equitable tolling of the habeas limita-tions period, is based not on how unusual the cir-cumstance alleged to warrant tolling is among the universe of prisoners but, rather, how severe an obstacle it is for the prisoner endeavoring to com-ply with the limitations period. 28 U.S.C.A. § 2244(d).

**[6] Habeas Corpus 197 ☞603.14**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
      197III(A) In General
         197k603 Limitations, Laches or Delay
           197k603.14 k. Petitioner's mental state, ignorance, or lack of skill. Most Cited Cases

**Habeas Corpus 197 ☞603.16**

197 Habeas Corpus
   *197III Jurisdiction, Proceedings, and Relief*
      *197III(A) In General*
         197k603 Limitations, Laches or Delay

           197k603.16 k. Access and assistance. Most Cited Cases
Instances which justify equitable tolling of a habeas limitations period include a corrections of-ficer's intentional confiscation of a prisoner's peti-tion shortly before the filing deadline, a state appel-late court's failure to inform a prisoner that his leave to appeal was denied, and an attorney's failure to file a habeas petition on behalf of a prisoner, des-pite explicit directions from the prisoner to do so. 28 U.S.C.A. § 2244(d).

Michele Hauser, New York, NY, for petitioner-ap-pellant.

Sara M. Zausmer, Assistant District Attorney (Cyr-us R. Vance, Jr., District Attorney, on the brief, Karen Schlossberg, Assistant District Attorney, of counsel), Office of the District Attorney, New York County, New York, NY, for respondent-appellee.

Before: WINTER, CABRANES, and LOHIER, Cir-cuit Judges.

PER CURIAM:
   **\*1** Petitioner-appellant Chauncey Dillon ("Dillon") appeals from an August 4, 2008 order of the United States District Court for the Southern District of New York (George B. Daniels, *Judge* ), granting the motion of respondent-appellee Super-intendent James T. Conway ("Conway") of Attica Correctional Facility ("Attica C.F.") to dismiss Dillon's petition for a writ of habeas corpus ("the Petition") on the ground that the Petition was barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A).[FN1]

*BACKGROUND*
   The facts in this case are not in dispute. On December 17, 2004, after a jury trial, the New York Supreme Court, New York County, entered a judg-ment of conviction against Dillon for Murder in the Second Degree, Assault in the First Degree, At-tempted Robbery in the First Degree, two counts of Criminal Possession of a Weapon in the Second

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 1548955 (C.A.2 (N.Y.)))**

Degree, two counts of Criminal Possession of a Weapon in the Third Degree, and Reckless Endangerment in the First Degree.[FN2] The convictions arose from Dillon's participation in a violent confrontation between the passengers of two cars following a collision in 2003. Dillon was sentenced principally to an indeterminate prison term of 30 years to life.

Dillon, represented by an attorney, appealed his conviction to the Appellate Division, First Department, claiming that (1) the prosecutor had placed inadmissible hearsay evidence before the jury during trial; (2) the prosecutor had impermissibly vouched for the credibility of a witness and improperly commented on Dillon's post-arrest silence in discussing a statement made by Dillon to the police; and (3) the trial court had erred in its instructions to the jury. On June 6, 2006, the Appellate Division unanimously affirmed Dillon's conviction. *People v. Dillon,* 30 A.D.3d 1135, 815 N.Y.S.2d 574 (1st Dep't 2006). Dillon applied for leave to appeal the Appellate Division's judgment to the New York State Court of Appeals. On August 31, 2006, the Court of Appeals denied Dillon's application, *People v. Dillon,* 7 N.Y.3d 812, 822 N.Y.S.2d 487, 855 N.E.2d 803 (2006); accordingly, his state court conviction became final ninety days later, on November 29, 2006.[FN3]

In order for his federal habeas petition to be timely, Dillon was required to file it on or before November 29, 2007, unless the statute of limitations was equitably tolled.

While incarcerated, Dillon had another inmate help him draft a *pro se* habeas petition, which he could have and would have timely filed before November 2007. In or around August 2007, however, Dillon retained an attorney, Richard M. Langone ("Langone"), to represent him in post-conviction collateral proceedings, and specifically *to prepare a petition for habeas corpus to the District Court arguing that Dillon had received ineffective assistance of counsel in the proceedings before the New York trial and appellate courts.* When

Langone was retained, he was in private practice with one law partner who, soon afterwards, left the firm, saddling Langone with "approximately twenty active cases." Joint Appx. at 19, 22–23. According to Langone, because of this workload, he was not able to begin working on Dillon's petition for habeas corpus until mid-October 2007. Joint Appx. at 19.

*2 On November 13, 2007, Langone flew to Attica C.F. with a 16–page habeas corpus petition for Dillon to sign in front of a notary. By affidavit, Langone affirms that during the visit he and Dillon spoke about the statute of limitations for filing the petition for habeas corpus under AEDPA and that Dillon

*specifically asked me not to wait until the last day to file the petition. I told him that I would not wait until the last day to file the petition....* On November 13, 2007, I left Attica prison with his verified petition in my hand and with him *expecting* that I would file it with [the District Court] before November 30th, the date I believed was the last day to file the petition.

Joint Appx. at 72 (some emphases supplied, some in original). Following this meeting, Langone continued to work on a lengthy memorandum of law to accompany the Petition.

Langone apparently operated under the incorrect assumption that the AEDPA statute of limitations begins to run on the day *after* a petitioner is denied leave to appeal to the New York Court of Appeals—that is, he believed he had until November 30, 2007 to file the Petition. According to the Report and Recommendation ("R & R") of Magistrate Judge Douglas F. Eaton, whose R & R was adopted by Judge Daniels, this assumption resulted from a misinterpretation of an opinion of the United States District Court for the Eastern District of New York, *Geraci v. Senkowski,* 23 F.Supp.2d 246, 253 (E.D.N.Y.1998), *aff'd,* 211 F.3d 6 (2d Cir.2000). In *Geraci,* the District Court held, *in different circumstances,* that "[t]he [AEDPA] statute of limitations

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 1548955 (C.A.2 (N.Y.)))**

began running ... the day *after* the petitioner was denied leave to appeal." *Id.* Langone had worked as a paralegal for one of the parties in *Geraci v. Senkowski,* and he allegedly relied upon that experience in determining the date by which the Petition was due.

In addition, for all of October and most of November, Langone, at Dillon's request, spent considerable time tracking down a copy of a videotape that Dillon believed would be useful in preparing the petition and would exonerate him.[FN4] Langone's attempts to find the videotape reportedly took longer than expected because the Legal Aid Society initially sent him the wrong videotape. Due to the poor quality of the videotape, when Langone finally obtained the correct tape he needed to hire an "enhancing service" to render its contents discernible. During this period, Dillon's wife called Langone several times on behalf of Dillon to ask if he had filed the Petition and to report that "Dillon was worried about running out of time." Joint Appx. at 20–21. Langone repeatedly told Dillon's wife that he was "working on the papers" and "not to worry." *Id.*

On November 30, 2007, Langone filed the Petition with an accompanying memorandum of law and appendix. On January 31, 2008, Conway moved to dismiss the Petition as untimely under AEDPA's one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1)(A). Following oral argument, Magistrate Judge Eaton issued the R & R in which he recommended that the District Court grant Conway's motion to dismiss the Petition as untimely.[FN5] Langone subsequently submitted objections to the R & R, claiming that (1) confusion existed regarding the application of the one-year statute of limitations under AEDPA; (2) his particular circumstances warranted equitable tolling for one-day; (3) his assurance that he would file a timely petition, coupled with his miscalculation of the expiration of AEDPA's statute of limitations, had severed the "agency relationship" between Langone and Dillon; and (4) the combination of Dillon's finan-

cial inability to hire counsel at an earlier point and Langone's heavy professional burdens following the departure of his law partner, and Langone's diligent efforts to obtain evidence that Dillon believed would demonstrate his actual innocence, qualified as "extraordinary circumstances" compelling equitable tolling byr one day.

**\*3** In its Memorandum Decision and Order of August 4, 2008, *see Dillon v. Conway,* No. 07–CV–10728, 2008 WL 2971986 (S.D.N.Y. Aug. 4, 2008), the District Court adopted the R & R of Magistrate Judge Eaton in its entirety. This appeal followed.

### DISCUSSION

[1] The District Court determined, as a matter of law, that equitable tolling was not appropriate because the record did not reveal the requisite "extraordinary circumstances." The existence of "extraordinary circumstances" sufficient to justify equitable tolling under § 2244(d) is a question of law, and we therefore review the judgment of the District Court *de novo. Belot v. Burge,* 490 F.3d 201, 206 (2d Cir.2007) ("If a district court denies equitable tolling [because] ... the governing legal standards would not permit equitable tolling in the circumstances—that aspect of the decision should be reviewed *de novo.*").

[2] The AEDPA statute of limitations "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.' " *Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010) (quoting *Day v. McDonough,* 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)). Indeed, in *Holland* the Supreme Court concluded, as had all eleven Courts of Appeals to consider the question, that § 2244(d) "is subject to equitable tolling in appropriate cases." *Id.* The Court went on to conclude that § 2244(d) may be tolled "only if [the petitioner] shows (1) that he has been pursuing *his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.*" *Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2560–62, 177 L.Ed.2d 130 (2010)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 1548955 (C.A.2 (N.Y.)))**

(internal quotation marks omitted). As a result, the Supreme Court concluded that while "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling," *id.* at 2564 (internal citations and quotation marks omitted), the Eleventh Circuit erred in concluding that " 'pure professional negligence' on the part of a petitioner's attorney ... can never constitute an 'extraordinary circumstance' " sufficient to justify equitable tolling, *id.* at 2559 (quoting *Helton v. Sec'y for Dep't of Corrs.,* 259 F.3d 1310, 1339 (11th Cir.2001); *cf. Smaldone v. Senkowski,* 273 F.3d 133, 138 (2d Cir.2001))(stating that attorney error alone is "inadequate to create the 'extraordinary' circumstances equitable tolling requires."); *Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.2000), *superseded by statute on other grounds,* N.Y.Crim. Proc. Law § 450.90(1) (holding that attorney's misunderstanding of the period for which a claim remained "pending" did not warrant equitable tolling).

[3] As the Supreme Court has long recognized, the "exercise of a court's equity powers ... must be made on a case-by-case basis." *Holland,* 130 S.Ct. at 2563 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)). The "flexibility" inherent in "equitable procedure" is necessary "to meet new situations [that] demand equitable intervention" with the understanding that a court of equity must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* (internal quotation marks omitted; alteration in original). Thus, rejecting the notion that rigid and nonvariable rules must guide courts of equity, the Supreme Court concluded that "given the long history of judicial application of equitable tolling, courts can easily find precedents that can guide their judgments." *Id.* at 2563.

**\*4** [4] Indeed, turning to our own Court's long history of applying equitable tolling, we conclude

that—while the question is a close one—equitable tolling was in fact appropriate in the circumstances presented. In the first instance, there is no question that Dillon "has been pursuing his rights diligently" as required by *Holland.* Accord, *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000) ("[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."). The question then, is whether the facts of this case present sufficiently "extraordinary circumstances" to warrant equitable tolling. We conclude that they do.

[5][6] As a general matter, we set a high bar to deem circumstances sufficiently "extraordinary" to warrant equitable tolling. Whether a circumstance is extraordinary is based not on "how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather [,] how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly,* 515 F.3d 149, 154 (2d Cir.2008). Instances which justify equitable tolling include a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, *see Valverde,* 224 F.3d at 133, a state appellate court's failure to inform a prisoner that his leave to appeal was denied, *see Diaz,* 515 F.3d at 154–55, and, perhaps most relevantly, an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so, *see Baldayaque v. United States,* 338 F.3d 145, 150–53 (2d Cir.2003). Indeed, in *Baldayaque,* we noted that while "attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period ... at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." 338 F.3d at 152 (emphasis in original).

In *Baldayaque,* we concluded that "[b]y refus-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 1548955 (C.A.2 (N.Y.)))**

ing to do what was requested by his client on such a fundamental matter," that is, filing a § 2255 petition, Baldayaque's attorney "violated a basic duty of an attorney to his client" and created a sufficient obstacle to justify equitable tolling. 338 F.3d at 152. We thus distinguished *Baldayaque* from *Smaldone v. Senkowski,* 273 F.3d 133, 138–39 (2d Cir.2001), and *Geraci v. Senkowski,* 211 F.3d 6, 9 (2d Cir.2000), in which we held that an "ordinary mistake" made by counsel regarding "the rules applied to the deadlines for filing of habeas petitions" did not justify equitable tolling. *Baldayaque,* 338 F.3d at 152. *Baldayaque,* unlike the prior cases, involved an attorney who willfully ignored the express instructions of his client, did not conduct any legal research on his client's behalf, and never spoke to or met with his client. We thus had no trouble concluding that such an "extreme situation" was precisely the sort of dereliction of professional responsibility necessary to justify equitable tolling. *Id.*

**\*5** Like the petitioner in *Baldayaque,* Dillon "did everything that could have been expected of him and ... went to extraordinary ends to have a [petition timely] filed on his behalf." *Id.* at 151 (internal quotation marks omitted). It is clear that Dillon and his wife were persistent in maintaining contact with Langone to insist that he file the petition ahead of the deadline. Even more significantly, Dillon, who was attempting to prove his actual innocence, urged Langone not merely to file a timely petition but *specifically* to avoid the possibility of a single-day error by "not [ ] wait[ing] until the last day to file the petition." Joint Appx. at 20. Langone, in each conversation, assured Dillon and Dillon's wife that he "would file the petition prior to November 30, 2007." Dillon relied on his counsel's assurances that the petition would be filed prior to the deadline. Although miscalculating a deadline is the sort of garden variety attorney error that cannot *on its own* rise to the level of extraordinary circumstances, *Holland,* 130 S.Ct. at 2564, *Baldayaque,* 338 F.3d at 152, Dillon's case involves more than a simple miscalculation. Langone in effect ad-

mitted affirmatively and knowingly *misleading* Dillon by promising him that he would file the petition before November 30, 2007. Joint Appx. at 20. Langone breached that promise when he failed to follow his client's instruction, with disastrous consequences that Dillon could neither have foreseen nor prevented.

This chronology is "heartbreaking," as the Magistrate Judge concluded. Joint Appx. at 69–70. More importantly, given the lawyer's deeply misleading statement to his client that he would not wait until the last day to file the petition, the specific facts of this case constitute an extraordinary circumstance sufficient to warrant equitable relief. *See Holland,* 130 S.Ct. at 2564 (referring to "fundamental canons of professional responsibility, which require attorneys ... to implement clients' reasonable requests...."); *Baldayaque,* 338 F.3d at 152.

On the record before us, and mindful of the Supreme Court's instruction that we "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case," *Holland,* 130 S.Ct. at 2563, we hold that in the specific circumstances presented here equitable tolling by one day was appropriate. Accordingly, we vacate the judgment of the District Court dismissing the Petition on the basis of the one-year statute of limitations, and we remand the cause for further proceedings consistent with this opinion.

### CONCLUSION

The judgment of the District Court is **VACATED,** and the cause is **REMANDED** for further proceedings consistent with this opinion.

> FN1. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), states, in relevant part:
>
> A 1–year period of limitation shall apply to an application for a writ of habeas

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 1548955 (C.A.2 (N.Y.)))**

corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. 2244(d)(1)(A).

FN2. Dillon was convicted of violating N.Y. Penal Law § 125.25[3] (murder in the second degree); § 120.10[4] (assault in the first degree); §§ 110.00, 160.15[2] (attempted robbery in the first degree); § 265.03[2] (criminal possession of a weapon in the second degree); § 265.02[4] (criminal possession of a weapon in the third degree); and § 120.25 (reckless endangerment in the first degree).

FN3. In *Pratt v. Greiner*, we explained that "[a] conviction becomes final for purposes of 28 U.S.C. § 2244(d) upon expiration of the ninety-day period to petition for a writ of *certiorari* to the United States Supreme Court." 306 F.3d 1190, 1195 n. 1 (2d Cir.2002). Dillon did not petition for a writ of *certiorari* to the United States Supreme Court.

FN4. According to Langone, "Dillon believed that the video would demonstrate to [the District Court] that he was not involved in the fight that led to the shooting, and that he was not in possession of a gun during the altercation on the night of the incident." Joint Appx. at 72.

FN5. The Magistrate Judge also found that Dillon was not entitled to equitable tolling under the "actual innocence exception" to AEDPA's statute of limitations. *See House v. Bell,* 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). **[A 74–77]** We reserve judgment on this aspect of the R & R and

focus specifically on the question of whether equitable tolling was justified under the "extraordinary circumstances" test.

C.A.2 (N.Y.),2011.
Dillon v. Conway
--- F.3d ----, 2011 WL 1548955 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2005 WL 2452920 (S.D.N.Y.)
**(Cite as: 2005 WL 2452920 (S.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Luis BURGOS-SANTOS, Petitioner,
v.
Gary GREENE, Superintendent of Great Meadows
Correctional Facility, Respondent.

No. 05 Civ. 3736(PKC).

Oct. 5, 2005.

*MEMORANDUM AND ORDER*
CASTEL, J.

**\*1** On March 29, 2005, Luis Burgos-Santos filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his July 22, 1998 conviction in Supreme Court, Bronx County, for second degree murder and criminal possession of a weapon. Respondent moves to dismiss the petition urging that the March 29, 2005 filing was beyond the one-year statute of limitations period provided for in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1).

Under the provisions of 28 U.S.C. § 2244(d)(1), a petition for a writ of habeas corpus may be filed within one year from the date on which a conviction became final or from the time that the facts giving rise to petitioner's claim could have been discovered. Mr. Burgos-Santos was convicted on July 22, 1998 and appealed his conviction to the Appellate Division, First Department. The appeal was decided on October 18, 2001. *See People v. Burgos-Santos,* 732 N.Y.S.2d (1st Dept.2001). Petitioner sought further review in the New York Court of Appeals and was granted leave to appeal on December 28, 2001. *See People v. Burgos-Santos,* 97 N.Y.2d 679 (2001). The New York Court of Appeals affirmed in an Opinion issued May 2, 2002, *sub nom. People v. Brown,* 98 N.Y.2d 226 (2002). The judgment became final on August 1, 2002, upon the expiration of the 90-day period for peti-

tioning for a writ of certiorari in the United States Supreme Court. *See William v. Artuz,* 237 F.3d 147, 150-51 (2d Cir.2001). Petitioner's March 29, 2005 filing in this Court was well beyond the one-year limitations period.

In an order filed April 12, 2005, Chief Judge Michael Mukasey directed petitioner to show cause why his petition should not be dismissed as untimely under AEDPA (the "April 12 Order"). The April 12 Order required petitioner, proceeding *pro se,* to demonstrate either that his petition was, indeed, timely, or that there was a basis in law or in equity for tolling the statute of limitations. The Order advised petitioner of the type of facts he would need to demonstrate in order to establish a basis for equitable tolling:

Specifically, petitioner may show that (1) there was an impediment imposed by the State which prevented him from timely filing a write of habeas corpus; (2) he is asserting the violation of a constitutional right not recognized by the Supreme Court until some time after the one-year statue of limitations had expired; or (3) the factual predicates of his claims were not and could not have been discovered within the applicable statute of limitations period. 28 U.S.C. § 2244(d)(1)(B), (C) and (D). He should include any facts showing that the instant petition should be equitably tolled by establishing (1) extraordinary circumstances prevented him from filing this petition on time and (2) he acted with reasonable diligence throughout the period he seeks to toll.

In response to the April 12 Order, petitioner filed an affirmation that recounted his actions following the ruling by the New York Court of Appeals. Petitioner came in contact with an organization that styled itself as the "Freedom Forum of *New York City-Constitutional Civil Rights Foundation-Civil Rights Advocacy Education Foundation*". It informed petitioner in a letter dated October 9 that its "current membership rate is $3,000.00" and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2452920 (S.D.N.Y.)
**(Cite as: 2005 WL 2452920 (S.D.N.Y.))**

that "[a]ll our members receive the services of Freedom Forum Attorneys, at all crafting stages of the *written* pleadings in a matter." (emphasis-in-the original) A letter from a "Sara Goldman, Attorney at Law" dated October 15, 2002 "acknowledge[d] activation of your membership...." FN1 Subsequently, petitioner received correspondence (undated) from Daniel C. Furman, Esq. of the "Furman Law Firm" identifying the firm on the letterhead as "Formerly: Freedom Forum of New York City". On July 30, 2003, petitioner wrote to Furman stating as follows: "Prior to the merger with Furman Law, I was informed that Habeas Corpus proceedings were instituted." The one-year limitations period would expire a few days after he sent the letter.

> FN1. Ms Goldman, according to respondent, was suspended from the practice of law on November 29, 2004 for her actions in connection with the First Department's Assigned Counsel Plan. *In re Sara Goldman,* 11 A.D.3d 178 (1st Dept.2004).

**\*2** In a letter dated May 7, 2004 to Al Dilmaghani, Esq. of the Furman Law Firm, petitioner acknowledged receipt of a "letter/report dated April 22 2004" and petitioner noted that "all the facts noted on your report are correct". In the May 7 letter, petitioner raised with Mr. Dilmaghani whether his case raised a Sixth Amendment issue in view of *Crawford v. Washington,* 541 U.S. 36 (2004).

By June 28, 2004, petitioner apparently had suspicions that his attorneys might not have lived up to their obligations and he wrote to the New York State Bar Association seeking biographical information concerning Messrs. Dilmaghani and Furman. He wrote to the Character and Fitness Committee of the First Department on June 29, the Office of Court Administration on July 5, the Third Department on July 5 and July 14 and the First Department on July 14. Petitioner annexes responses dated July 9 from the Office of Court Administration, July 14 from the Third Department, and July 16 and July 20 from the First Department. The responses simply confirmed that Dilmaghani and Furman were members of the bar, and not then under suspension, although Furman's attorney registration filing was reported to be about 9 months late. By August 13, 2004, petitioner had written to Dilmaghani inquiring as to "the status of my appeal". By announcement dated August 23, 2004, petitioner was advised that Furman had died and that Dilmaghani was the executor of the estate. Petitioner wrote Dilmaghani on Septembers 8 asking for copies of files and advising that "[a]s you know I am on a dead line [sic] to file my habeas corpus in the federal district court...." He wrote to the Clerk of the Court in October 1, 2004 seeking "a copy of any document submitted with this Court by Mr. Daniel C. Furman...."

The facts are muddy as to petitioner's own belief as to the pendency of a petition. On or about July 30, 2003, petitioner was of the stated belief that a habeas petition had been filed. As of September 8, 2004 he was concerned about a "dead line" for filing. By October 1, 2004 he was writing to the Clerk of this District inquiring as to the existence of a filing or, alternatively, for the appointment of a "competent attorney to prepare Mr. Burgos Habeas Corpus petition...."

*The Standards For Equitable Tolling.*

The standard for equitable tolling on the basis of attorney incompetence or misconduct has been set forth most recently in two opinions of the Second Circuit: *Baldayaque v. United States,* 338 F.3d 145 (2d Cir.2003) and *Doe v. Menefee,* 391 F.3d 147 (2d Cir.2004). The petitioner must demonstrate that: (1) an extraordinary circumstances prevented the timely filing of the petition; (2) there is a causal connection between the extraordinary circumstances and the failure to file; and (3) the petitioner was diligent during the period for which he seeks tolling. *Doe,* 391 F.3d at 175. Petitioner's reliance upon counsel does not relieve him of the necessity of having acted diligently:

**\*3** "Even where the extraordinary circum-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2452920 (S.D.N.Y.)
**(Cite as: 2005 WL 2452920 (S.D.N.Y.))**

stances on which the petitioner rests his claim involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time.... In other words, the act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition. Particularly because petitioners often are fully capable of preparing and filing their habeas petitions *pro se*, and *pro se* status does not in itself constitute an extraordinary circumstance meriting tolling ... it would be inequitable to cumstance meriting tolling ... it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed *pro se*. In the attorney incompetence context, therefore, the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own."

    *Id.*

    Here, the extraordinary circumstance was the confluence of the following: the acceptance of payment for the benefit of petitioner, the ambiguous and, hence, misleading communications from the "Freedom Forum", the cavalier transfer of a client ( *i.e.* petitioner) from Ms. Goldman to Mr. Furman without any indication that either secured the client's prior informed consent, the inaction of Ms. Goldman and Mr. Furman in not filing a habeas petition within the limitations period, and the failure of either to inform petitioner of their failure to act.
FN2 The record demonstrates that petitioner was in direct communication with Sara Goldman, Esq. and the Freedom Forum of New York City of which she variously described herself as "General Counsel" or "Attorney at Law, Office of General Counsel". Fostering the notion that she would be representing petitioner, Ms. Goldman listed her personal registration with the bar of this Court on the letterhead im-

mediately below the name "Freedom Forum of New York City": "Federal Bar No: SG2509 USDC/ED & SDNY". The records of this Court indicate that a person of the same name with the same identification number became a member of the bar of this Court on August 13, 2002, about seven weeks before the correspondence was written. Sara Goldman of the "Freedom Forum" has appeared in habeas proceedings in Courts within this Circuit. *See Williams v. Donnelly*, 2005 WL 2290592 (E.D.N.Y. April 12, 2005). *Reyes v. Irwin*, 273 F .Supp.2d 205 (E.D.N.Y.2003). Ms. Goldman, in "activat[ing]" petitioner's "member[ship]", tacitly acknowledged the receipt of the $3,000 payment referenced in a letter dated October 9. It was reasonable for a non-English speaking, incarcerated prisoner to believe that Goldman had undertaken to file a habeas petition on his behalf. Furman and his firm freely assumed Goldman's professional obligations to petitioner but did not file a petition or alert him to the looming expirations of the statute of limitations. It was incumbent upon attorney Furman, at a bare minimum, to have set the petitioner straight when in petitioner's letter of July 30, 2003, he expressed his understanding that "Habeas Corpus proceedings were instituted...." Furman should have informed petitioner that no proceedings had been filed and none would be filed by the expiration of the statute of limitations. It is not clear when prior to July 30 petitioner formed the belief that the petition had been filed, but the unrebutted facts lead to the conclusion that the belief was reasonable and grounded in his communications with counsel. I conclude that the foregoing course of events constitute an extraordinary circumstance and satisfies the first required prong for equitable tolling.

> FN2. None of petitioner's former attorneys are parties to the present proceeding and I cannot and do not make any findings binding on them. It is not necessary for me to decide in the course of this proceeding whether the so-called "Freedom Forum" acted in accordance with New York Disciplinary Rules in holding itself out as a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2452920 (S.D.N.Y.)
(Cite as: 2005 WL 2452920 (S.D.N.Y.))

Page 4

"foundation" to which a person could become a "member" and then "receive the services of Freedom Forum Attorneys, at all crafting stages of the *written* pleadings in a matter." (emphasis-in-the-original") *See* DR 2-101(A)(prohibiting claims that are false, deceptive or misleading) and (E) (requiring a written statement clearly describing the services to be rendered for a fixed fee).

**\*4** I also conclude that the second prong is met because counsel's failure to file or, alternatively advise petitioner that he had not filed and that the statute of limitations would soon expire, was the proximate cause of petitioner not filing within the one-year period. Finally, I conclude the third prong is met because petitioner was diligent in his pursuit of his rights during the period for which tolling is sought. Petitioner, who is incarcerated, states in his affirmation that he neither speaks nor writes English. He made inquiry concerning his attorney's actions on multiple occasions. Petitioner's actions demonstrate that he had formed a basis to be suspicious of his attorney's performance as of June 28, 2004 and I conclude that tolling ended as of that date. I conclude on the record before me that there is a basis for equitable tolling from October 15, 2002, when he was advised of the activation of his membership in the "Freedom Forum", until June 28, 2004, when he expressed suspicion concerning his attorneys' actions. Nevertheless, the statute of limitations was running and was not tolled from August 1, 2002 until October 15, 2002, a period of 75 days; it also was running from June 28, 2004 to March 29, 2005, a period of 271 days. Excluding the period of tolling, petitioner's petition was filed 346 days after August 1, 2002 and, thus, is timely.

I acknowledge the potential for some imprecision in the calculation of the tolling period, but I do not conclude it is not material. A reasonable person might not expect the petition to have been filed until some reasonable period of time after the engagement of an attorney and, by this logic, the tolling should not begin on October 15, 2002 but some date thereafter. But the same logic would apply to the end of tolling. A reasonable person would not expect to know the results of an investigation of his attorneys' conduct commenced on June 28, 2004 until a date sometime thereafter. Thus, if I were to add a period of perhaps sixty days to both the commencement and the ending of the tolling period, it would not alter the conclusion that the petition is timely.

*Conclusion*

I deny the motion to dismiss and conclude that the petition is not time-barred under 28 U.S.C. § 2244(d)(1). Respondent is directed to file the record in the state court proceedings and its response to the petition by December 2, 2005. Petitioner may reply by January 4, 2006.

SO ORDERED.

S.D.N.Y.,2005.
Burgos-Santos v. Greene
Not Reported in F.Supp.2d, 2005 WL 2452920 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2002 WL 31571733 (S.D.N.Y.)
**(Cite as: 2002 WL 31571733 (S.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Angel PADILLA Petitioner,
v.
UNITED STATES OF AMERICA Respondent.

Nos. 02 Civ. 1142(CSH), 94 CR. 313(CSH).
Nov. 19, 2002.

Prisoner brought petition to set aside or vacate his sentence. The District Court, Haight, Senior District Judge, held that equitable tolling of Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitation was not warranted.

Petition denied.

West Headnotes

**Criminal Law 110 ⚖═1586**

110 Criminal Law
   110XXX Post-Conviction Relief
      110XXX(C) Proceedings
         110XXX(C)1 In General
            110k1586 k. Time for Proceedings.
Most Cited Cases
    Equitable tolling of Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitation was not warranted and did not excuse late filing of motion to set aside or vacate sentence, even though prisoner asserted that three month delay in learning about denial of certiorari, subsequent confusion about whether he was represented by counsel, delay in obtaining particular transcripts and witness reports, and his ignorance of law warranted extension of time; whatever delays were caused by confusion and late notification did not affect his ability to file timely petition, and prisoner did not describe documents or transcripts he sought, length of, or reason for, delay, or his efforts in obtaining them. 28 U.S.C.A. § 2255.

*MEMORANDUM OPINION AND ORDER*
HAIGHT, Senior J.

**\*1** Angel Padilla, acting *pro se*, has filed a "barebones" petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255. Along with that petition, Padilla has filed a motion to excuse the petition's untimeliness and a motion to allow the filing of an amended petition once he is able to more fully develop and support his basic arguments. The government urges the Court to reject the petition as untimely. For the reasons that follow, I conclude that no extraordinary circumstances justify the equitable tolling of the applicable one-year statute of limitations and therefore deny plaintiff's request to file a late petition.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year limitation period on the filing of section 2255 petitions which begins to run on the day the defendant's judgment of conviction becomes final. *See* 28 U.S.C. § 2255(1). A petitioner's conviction becomes final when the United States Supreme Court denies his petition for a writ of *certiorari. United States v. Leon,* 203 F.3d 162, 163 (2d Cir.2000). Padilla acknowledges that his *habeas* petition was due on October 2, 2001, one year after the Supreme Court denied his petition for a writ of *certiorari.* Padilla first submitted his "barebones" 2255 petition on January 10, 2002, but it was returned by the Clerk's Office of this Court for an original signature. The petition with his original signature was returned and officially docketed on February 11, 2002. Using either date as the submission date Padilla's petition was several months late.

The Second Circuit has taken the position that the AEDPA's one-year statute of limitations is not a jurisdictional bar and is therefore subject to equitable tolling. *Green v. United States,* 260 F.3d 78, 82 (2d Cir.2001). However the court of appeals has also admonished that equitable tolling applies only in " 'rare and exceptional' circumstances" in *habeas* cases. *Id.* (quoting *Smith v. McGinnis,* 208

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31571733 (S.D.N.Y.)
**(Cite as: 2002 WL 31571733 (S.D.N.Y.))**

F.3d 13, 17 (2d Cir.2000)). To qualify for equitable tolling, a petitioner must show that "extraordinary circumstances prevented him from filing his petition on time." *Smith,* 208 F.3d at 17. The burden is on the petitioner to demonstrate the existence of such extraordinary circumstances. *Ortiz v. Senkowski,* 01 Civ. 2402, 2001 WL 1267178, *2 (S.D.N.Y. Oct.22, 2001). Even when extraordinary circumstances are shown, the statute of limitations will be stayed only if the petitioner "acted with reasonable diligence throughout the period he seeks to toll." *Smith, id.* If despite the exceptional circumstances the petitioner could have filed the petition on time through the exercise of "reasonable diligence," the petitioner cannot secure the benefit of equitable tolling. *Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000).

In his motion requesting an extension of the limitations period, Padilla argues that his delay in filing resulted from the following circumstances which are not seriously in dispute. Padilla was not notified by his appellate counsel that the Supreme Court had denied his *certiorari* petition until three months after its denial. In January of 2001, soon after he learned that his conviction was final, he sought the assistance of students participating in the University of Kansas School of Law's Defender Project ("the Project"). Letters constituting a trail of correspondence between Padilla and the Project, as well as Padilla's letters to his former counsel and this Court, are attached to Padilla's motion. The letters demonstrate that the Project's potential assistance was initially delayed by confusion over whether Padilla's appellate counsel was planning to file a *habeas* petition on his behalf. The Project informed Padilla in late April that its law students could not assist him if he was still being represented by his appellate counsel. It was not until the middle of June that the Project was satisfied that Padilla was no longer represented by counsel and began to review his file in earnest.

*\*2 The arguments Padilla evidently presented to the Project in support of habeas relief are the*

same as those he offers in the 2255 petition filed here. Padilla argues that the government committed prosecutorial misconduct in presenting two different theories of one of the murders of which Padilla was convicted-one theory offered through the testimony of Darrell Gray at Padilla's trial and one offered through the testimony of James Albizu at the separate trial of two of his co-defendants. Padilla also contends that his trial counsel provided ineffective assistance in failing to interview certain unspecified witnesses listed on government DD-5 witness reports whom he surmises would have contradicted the government's theory at his trial.

The Project students informed Padilla in a letter dated July 25, 2001 that they would not prepare a 2255 petition for him because their review of the record led them to conclude that his arguments had no merit. However, for the next several months, the Project students continued to review his file in an attempt to determine whether there was sufficient newly discovered evidence to support a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Unlike a 2255 petition, under Rule 33's different time limit, Padilla's motion would not have been due until February 2, 2002. However, in a letter dated October 31, 2001, a Project student carefully evaluated the evidence, explained to Padilla that sufficient grounds for a Rule 33 motion did not exist and notified him that they would not be preparing such a motion for him. The student also stated that he was returning all of Padilla's documents and transcripts to him by certified mail.

Padilla argues that the combination of the three month delay in learning about the denial of *certiorari,* the initial confusion about whether he was represented by counsel and his ignorance of the law warrant the extension of time. Padilla also seems to suggest that a delay in obtaining certain transcripts and DD-5 witness reports excuses his late filing. Padilla's reasons are not sufficient to justify equitable tolling.

As a preliminary matter, Padilla's suggestion

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31571733 (S.D.N.Y.)
**(Cite as: 2002 WL 31571733 (S.D.N.Y.))**

that the process involving the Project law students' review of his case should somehow excuse his untimely filing is unavailing. *Habeas corpus* petitioners have no right to counsel. *Bloomer v. United States,* 162 F.3d 187, 192, n. 1 (2d Cir.1998). Padilla certainly was not *entitled* to help from University of Kansas law students. He understandably *sought* their help in preparing his petition because he is an inexperienced layperson. But there was no guarantee the students would take the case, a consideration that the students made clear from the outset. Padilla was admittedly well aware of his October 2, 2001 deadline for many months before it expired. Despite Padilla's entirely understandable hope that the Project law students his sincere hope that the law students would assist him, the nondelegable responsibility for meeting that deadline rested firmly with him. Padilla should have been prepared for the possibility that the Project would not take his case. He had no reason to assume that it would, students wouldn't take his case. He should have been ready to file a timely 2255 petition if the Project turned him down.

**\*3** The fact that the Project ultimately rejected Padilla's request for assistance cannot operate to extend his *habeas* filing deadline. It is common for *habeas* petitioners, most of whom are not professionally trained lawyers, to request help in preparing their petitions. Consequently a hope for, even an expectation of, assistance that is ultimately refused is not an extraordinary circumstance that would allow tolling for the period of time between the request and the refusal. If it were, countless *habeas* petitioners would have their deadlines extended indefinitely while they tried in vain to secure assistance. That sort of universally-applicable and limitless excuse would essentially do away with the AEDPA's statute of limitations. *Cf. Duran v. United States,* Nos. 94 Cr. 300, 00 Civ. 407, 2002 WL 867864, \*5 (May 3, 2002) (petitioner's lack of familiarity with English language not extraordinary circumstance justifying late filing given that "the majority of the inmates at Fort Dix [ ] could make the same claim"); *Fennell v. Artuz,* 14 F.Supp.2d

374, 377 (S.D.N.Y.1998) (excuses common among prisoners such as lack of education and lack of legal knowledge cannot be regarded as extraordinary to justify tolling or AEDPA statute of limitations would be undermined); *Davis v. McCoy,* 00 Civ. 1681, 2000 WL 973752, \*1 (S.D.N.Y. July 14, 2000) ("[F]iling delays associated with routine restrictions of prison life generally do not meet the requisite extraordinary circumstances standard.") (quotations omitted); *Martinez v. Kuhlmann,* 99 Civ. 1094, 1999 WL 156177 (S.D.N.Y. Dec. 3, 1999) (lack of English proficiency and lack of legal research assistance were not sufficiently extraordinary to equitably toll AEDPA statute of limitations) (citing cases).

To be sure, Padilla's appellate counsel's inexplicable three-month delay in notifying that his *certiorari* petition had been denied, and the Project law students' initial erroneous belief that they could not help him because he was still represented by counsel, were external forces out of Padilla's control that foreshortened his preparation process. But even assuming *dubitante* that these factors could be considered "exceptional" rather than ordinary, whatever delays were caused by the confusion and the late notification clearly did not affect his ability to file a timely petition. In January 2001,, when Padilla finally learned that *certiorari* had been denied, he understood that his deadline for filing a 2255 petition was in May 2001. In April, he learned that this initial belief was mistaken and that he had until October to file the petition. The confusion about his representation was cleared up by mid-June. Padilla was aware by late July, 2001, more than two months before his petition was due, that the Project would not help him file his petition. The July 25, 2001 letter, in which a Project student informed Padilla that she saw no basis for a petition, also reminded Padilla that the deadline for filing his petition was October 2. A September 11, 2001 letter from another Project student included a blank form for filing a 2255 petition.

**\*4** Nevertheless, Padilla waited until January

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31571733 (S.D.N.Y.)
**(Cite as: 2002 WL 31571733 (S.D.N.Y.))**

of 2002 to submit his petition, more than five months after he learned that the students were not going to assist him and more than a year after he learned his conviction was final. This is not reasonable diligence. While Padilla points to his inexperience in legal matters and makes reference to a delay in obtaining transcripts and DD-5s, he does not explain how these or the other delays, even if extraordinary, prevented him from filing a timely motion. That failure is fatal. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde,* 224 F.3d at 134. Padilla gives no indication of what efforts he made to file his petition between July 25, 2001, when the Project students told him they would not be assisting him, and October 2, 2001, the date by which the Project students cautioned Padilla the petition must be filed. Given the abbreviated nature of the petition Padilla eventually filed in January 2002, it is difficult to understand why Padilla could not have filed the same barebones petition in October 2001.

As noted, Padilla cites delays in obtaining DD-5 witness reports and other unspecified "information and transcripts" as one of the reasons for filling the late petition. Memorandum in Support of Leave to File Late § 2255 Motion at 2. This argument does not excuse his default. Padilla does not describe the documents or transcripts sought, the length of or reason for the delay, or his efforts in obtaining them. Without knowing what materials he was missing and how he attempted to obtain them, it is impossible to assess the validity of Padilla's claim that his ability to file his petition was hindered by his late access to them. As the government points out, based on Padilla's claims in support of his *habeas* petition and some of his correspondence with the law students, the transcripts Padilla needed to support his motion seem to be the transcripts of Darrell Gray's testimony at Padilla's

trial and of James Albizu at the trial of Padilla's co-defendants. Padilla would likely have also needed Albizu's post-arrest statement and DD-5s. But the July 25 letter from the law student indicates that the students had reviewed Albizu's DD-5s and post-arrest statement and Darrell Gray's trial testimony by the time they rejected the case. Moreover, the September 10 letter notes that they had by then received the Albizu transcript. Thus, although it is not clear what transcripts and DD-5s he was missing, it appears that Padilla had access to all of the materials that were necessary to make his arguments well before the October 2 deadline.

Even if Padilla did not have all the necessary materials or experienced a delay in obtaining them, those are not extraordinary circumstances warranting equitable tolling. *See Davis v. McCoy,* 2000 WL 973752, * 2 (prisoner's lack of access to necessary court papers for two years did not constitute an extraordinary circumstance); *Fadayiro v. United States,* 30 F.Supp.2d 772, 779 (D.N.J.1998) (fact that petitioner had been unable to obtain transcripts and other records needed for his 2255 petition did not rise to the level of extraordinary circumstances justifying equitable tolling). Moreover, even if the delays in receiving whatever documents he believed necessary could be considered extraordinary, Padilla has not shown that he made any effort to file his petition without them, or filed his petition promptly after he obtained them. In short, Padilla has failed to demonstrate that he was reasonably diligent in attempting to file his petition despite the purported delays in obtaining the materials.

**\*5** I cannot excuse Padilla's late filing because the reasons he has proffered do not invoke a circumstance so unusual and troubling that he has been "prevented in some extraordinary way from exercising his rights". *Johnson v. Nyack Hospital,* 86 F.3d 8, 12 (2d Cir.1996) (internal quotations omitted). To the contrary, the circumstances he faced are not uncommon among prisoners without a legal education. Were I to allow tolling of the AEDPA statute of limitations in this case, I would cre-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31571733 (S.D.N.Y.)
**(Cite as: 2002 WL 31571733 (S.D.N.Y.))**

ate an exception that would swallow the rule. Equitable tolling is not appropriate here.

Padilla's request to file a late petition is denied. The Clerk of the Court is directed to dismiss his petition with prejudice.[FN1]

> FN1. In view of this disposition, Padilla's further "Motion Pursuant to 28 U.S.C. § 2255", served by mail on August 29, 2002, and "Motion under Rule 36 to Correct Clerical Mistakes", served by mail on November 12, 2002, will not be accepted for filing. The Pro Se Office is hereby directed to return those papers to Mr. Padilla. The Court is mailing a copy of this Opinion to him.

It is SO ORDERED.

S.D.N.Y.,2002.
Padilla v. U.S.
Not Reported in F.Supp.2d, 2002 WL 31571733 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2000 WL 973752 (S.D.N.Y.)
**(Cite as: 2000 WL 973752 (S.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
King DAVIS, Petitioner,
v.
Joseph E. McCOY, Superintendent Cayuga Correctional Facility Respondent.

No. 00 CIV. 1681(NRB).
July 14, 2000.

King Davis, Pro Se, c/o Circle of Hope, Syracuse.

Nicola Grey, Esq., Assistant Attorney General, New York.

MEMORANDUM AND ORDER
BUCHWALD, District J.

*1 Petitioner, King Davis, currently in custody at Cayuga Correctional Facility, brings this petition for a writ of habeas corpus challenging his conviction on June 14, 1971 of first-degree rape. As more fully set forth below, the petition is barred by the applicable statute of limitations and is therefore denied.

*Background*

On June 14, 1971, petitioner was sentenced to an indeterminate prison term of 5 to 15 years, pursuant to the judgment of the Supreme Court, New York County, upon his plea of guilty plea to one count of Rape in the First Degree. Petitioner did not directly appeal the judgment. Thereafter, in 1978, petitioner was again convicted, upon a jury verdict, of Sodomy in the First Degree and Robbery in the Second Degree. Petitioner was sentenced on August 22, 1978 as a second felony offender to concurrent indeterminate prison terms of 12 1/2 to 25 years and 7 1/2 to 15 years respectively, which he is now serving.

On March 13, 1999 petitioner filed a motion, pursuant to NYCPL § 440, to vacate the June 14,

1971 conviction, alleging: (1) that his guilty plea was improperly obtained, (2) defective indictments, (3) improper sentence, (4) ineffective assistance of counsel, (5) improper identification procedures, and (6) denial of a full and fair opportunity to have his claims considered in state court. *See* Petition at ¶ 12. The Supreme Court, New York County, denied petitioner's motion on May 27, 1999. *See* Declaration of Nicola N. Grey, dated May 25, 2000, ("Grey Decl.") Ex. A. The Appellate Division, First Department, denied him leave to appeal on August 26, 1999, *see id.* Ex. B, as did the Court of Appeals on September 23, 1999, *see id.* Ex. C.

Petitioner now brings the instant federal habeas corpus petition, filed December 17, 1999, raising the same claims as in his March 13, 1999 motion to vacate. Respondent contends, however, that the petition is untimely because it was filed after the applicable statute of limitations had expired.

*One Year Limitations Period*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24,1996, requires that a federal habeas corpus petition be filed within one year of the date a state court conviction became final or within one year of the date on which the facts giving rise to the claim could have been discovered. *See* 28 U.S.C. § 2244(d)(1). FN1 The Second Circuit held in *Ross v. Artuz*, 150 F.2d 97 (2d Cir.1998) that a prisoner whose conviction became final prior to the effective date of the AEDPA has one year or until April 24, 1997 to file a Section 2254 habeas petition.

FN1. Section 2244(d)(1) now provides:

A one year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of-

(A) the date on which the judgment be-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 973752 (S.D.N.Y.)
**(Cite as: 2000 WL 973752 (S.D.N.Y.))**

came final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of diligence.

The holding in *Ross* is applicable here, since the challenged conviction, in the absence of a direct appeal, became final in 1971. The petitioner did not file a habeas corpus petition within the one-year *Ross* grace period, and there were no state post-conviction motions pending during this period.[FN2] On its face, therefore, the petition is untimely.

FN2. Section 2244(d)(2) reads:

The time during which a properly filed post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Tolling*

**\*2** Petitioner argues that the limitations period should be tolled or is otherwise revived by the filing of his state court collateral challenge on March 13, 1999. The Second Circuit addressed this issue, however, in *Smith v. McGinnis*, 208 F.3d 13 (2d Cir.2000). The Court held that, during its pendency, a properly filed state collateral proceeding tolls the statute of limitations but does not reset the date on which the statute begins to run.[FN3] Thus, the limitations period expired on April 24, 1997, well before petitioner filed his motion to vacate on March 13, 1999, and the period was not revived by the latter proceeding.

FN3. The court further noted in *Smith* that the petitioner's pro se status did not merit equitable tolling. *Smith*, 208 F.3d 13

Petitioner also asserts in his reply brief, dated July 1, 2000, that he is entitled to equitable tolling of the one-year grace period because he did not have access to necessary court papers between April 8, 1996 and November 9, 1998. Reply Mem. at 4. His argument fails, however, as such tolling applies only in "rare and exceptional circumstances." *Smith*, 208 F.3d at 17 (quoting *Turner v. Johnson*, 177 F.3d 390 (5th Cir.1999). The burden is on the petitioner to show that "extraordinary circumstances prevented him from filing his petition on time," *id.* at 17, and filing delays associated with "routine restrictions of prison life" generally do not meet the requisite extraordinary circumstances standard. *Atkins v. Harris*, No. C98-3188 MJJ(PR), 1999 WL 13719, at \*2 (N.D.Cal. Jan. 7, 1999) (holding that, where petitioner had sixteen years to file a timely petition prior to 1996, factors such as limited library access, transfers, and lockdowns during the one-year limitations period did not constitute extraordinary circumstances).[FN4]

FN4. *See also Montalvo v. Strack.* No. 99 Civ. 5087, 2000 WL 718439 (S.D.N.Y. June 5, 2000)(JGK) (transfers between prison facilities did not merit equitable tolling of the one-year limitations period); *Miller V. Marr*, 141 F.3d 976 (10th Cir.1998) (equitable tolling denied on a claim of lack of access to federal legal materials from 1/21/95 to 4/29/97 where court found petition, filed on 7/10/97, could have been filed before 1/21/95); *United States v. Van Poyck*, 980 F.Supp. 1108 (C.D.Cal.1997) (inability to secure court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 973752 (S.D.N.Y.)
**(Cite as: 2000 WL 973752 (S.D.N.Y.))**

> documents, lockdowns, and limited access to law library were not extraordinary circumstances).

In this instance, the inability to obtain documents does not rise to the level of extraordinary circumstances. Also, given the fact petitioner had almost twenty five years prior to 1996 in which to file a timely petition, the claim for equitable tolling is clearly without merit.

*Conclusion*

For the foregoing reasons, the petition for a writ of habeas corpus is denied. As petitioner has not made a substantial showing of the denial of a Constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. *See also United States v. Perez,* 129 F.3d 255 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

IT IS SO ORDERED.

S.D.N.Y.,2000.
Davis v. McCoy
Not Reported in F.Supp.2d, 2000 WL 973752 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.